UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
GEORGE HILDEBRANDT, JR. and          )
PATRICIA HILDEBRANDT,                 )
)
            Plaintiffs,               )
)
      v.                              )          Civil Action No. 04-1423 (PLF)
)
TOM VILSACK, Secretary,               )
United States Department of Agriculture, )
)
and                                   )
)
JOE LEONARD, JR., Assistant Secretary for )
Civil Rights, United States Department of )
Agriculture,                          )
)
            Defendants.[1]            )
_____)

OPINION

      This matter is before the Court on the defendants' motion for sanctions against the

plaintiffs, along with the defendants' motion to strike a "notice of filing" submitted by the

plaintiffs shortly after the filing of their memorandum opposing the motion for sanctions.  The

defendants seek dismissal of this case (or, in the alternative, other severe sanctions) due to the

plaintiffs' failure to obey a discovery order, along with other conduct by the plaintiffs that the

defendants contend has protracted this action and forced them to expend time and resources.  The

defendants also maintain that the plaintiffs' notice of filing violates the local rules of this Court.

_____

      [1]      Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Tom Vilsack is substituted for former Secretary of Agriculture Ann Veneman, and Joe Leonard, Jr., is substituted for former USDA Assistant Secretary for Civil Rights Vernon Parker.

Upon consideration of the parties' submissions, the relevant legal authorities, and the entire record in this case, the Court will deny the defendants' motion to strike, and it will grant in part and deny in part the defendants' motion for sanctions.[2]

## I.  BACKGROUND

Plaintiffs George and Patricia Hildebrandt brought this action against the defendants under the Equal Credit Opportunity Act of 1972 ("ECOA"), 15 U.S.C. § 1691, claiming that they have been discriminated against because of their race.  See Second Amended Complaint [Dkt. No. 33-2].  The plaintiffs originally were represented in this action by attorney James W. Myart, Jr., who was counsel for the Hildebrandts until January 2008, after Mr. Myart's application to renew his membership in the bar of this Court was rejected.

The defendants served their first set of interrogatories and requests for production on the plaintiffs in July 2006, in accordance with the Court's Scheduling Order.  Mem. at 2-3. The plaintiffs did not respond within the thirty-day deadline established by the Scheduling Order, and only after being reminded by the defendants of this missed deadline did they supply their responses, eleven days late.  Id. at 3.  The defendants found the plaintiffs' responses to the discovery requests to be inadequate: the plaintiffs answered only one of the defendants' nineteen interrogatories and responded to only one of the twenty-nine requests for production; the

---

[2]  The papers filed in connection with this matter include: defendants' motion for dismissal or other sanctions ("Mot. Sanctions") and supporting memorandum ("Mem.") [Dkt. No. 115]; plaintiffs' opposition ("Opp.") [Dkt. No. 119]; defendants' reply ("Reply") [Dkt. No. 122]; plaintiffs' notice of filing ("Notice of Filing") [Dkt. No. 120]; defendants' motion to strike plaintiffs' notice of filing ("Mot. Strike") [Dkt. No. 124]; plaintiffs' opposition to defendants' motion to strike ("Mot. Strike Opp.") [Dkt. No. 125]; and defendants' reply ("Mot. Strike Reply") [Dkt. No. 127].

plaintiffs' lone interrogatory response, moreover, did not address the matters inquired about in the interrogatory.  Id. at 3.  The defendants promptly sent a letter to plaintiffs' counsel detailing the deficiencies in the plaintiffs' responses, and offering the plaintiffs additional time to supplement them.  That time came and went without the plaintiffs furnishing the requested materials or responding to the defendants' attempts to confer telephonically with their counsel about the matter.  Id. at 4-5; see id., Exhs. 1-8.

Having received nothing from the plaintiffs, and being unwilling to allow more time for compliance in view of the plaintiffs' non-responsiveness, the defendants filed an expedited request for a teleconference to discuss the impasse.  See Docket No. 58.  This case subsequently was referred to Magistrate Judge John Facciola for the management of discovery. See Referral Order (Oct. 11, 2006).  After receiving submissions from the parties and conducting proceedings in early December of 2006, Magistrate Judge Facciola issued an Order on December 22, 2006, directing plaintiffs' counsel, by January 5, 2007, to supplement the deficient interrogatory responses and to correlate each document that had been provided in response to the defendants' production requests with the appropriate request.  Order ¶¶ 3-4, 7 (Dec. 22, 2006).

The January 5 deadline passed, once again, with nothing forthcoming from the plaintiffs.  After an additional week went by with still no word from the plaintiffs, the defendants filed a motion for sanctions.  See Docket No. 63.  Plaintiffs' counsel obtained two extensions of time in which to respond to this motion.  See Minute Order (Jan. 23, 2007); Minute Order (Feb. 2, 2007).  Counsel then sought a third extension, which — for the first time — also requested an extension of time in which to supply the plaintiffs' still-outstanding discovery responses.  See Docket No. 68.  Magistrate Judge Facciola granted this motion and set February 23, 2007, as the

deadline for delivery of the plaintiffs' supplemental discovery responses.  See Minute Order
(Feb. 16, 2007).

Late in the day on February 22, 2007, plaintiffs' attorney, Mr. Myart, attempted
but failed to ship the outstanding discovery materials to the defendants via overnight shipping.
Although Mr. Myart faxed the plaintiffs' supplemental interrogatory responses to the defendants
on that date, the remainder of the discovery materials was not shipped until February 23.
Because these materials would not reach the defendants by the court-ordered deadline — that
same day — Mr. Myart filed an "emergency motion" to further enlarge the time in which to
deliver discovery to the defendants.  See Docket No. 69.  The materials ultimately arrived on
February 26, and on February 27 the Magistrate Judge issued a Minute Order granting the
plaintiffs' emergency motion *nunc pro tunc*.  A separate Minute Order issued that same day
observed that the plaintiffs now appeared to have complied with the Court's discovery deadlines.
Minute Order (Feb. 27, 2007).

Briefing continued on the defendants' motion for sanctions, however, and in a
September 2007 opinion Magistrate Judge Facciola vacated his extension of the January 5, 2007
deadline by which the plaintiffs were supposed to have supplied their supplemental discovery
materials.  Judge Facciola explained that because the plaintiffs did not request an extension until
after the deadline had already passed, under the Federal Rules of Civil Procedure their request
"had to be accompanied by a motion establishing that the failure to act in accordance with the
deadlines was 'the result of excusable neglect.'"  Memorandum Opinion at 3 (Sept. 11, 2007)
(quoting Fed. R. Civ. P. 6(b)).  The Magistrate Judge ruled that for the plaintiffs to be considered
in compliance with the December 2006 discovery order, they would need to submit a motion for

4

leave to file that established "excusable neglect" for the missed deadline.  Id. at 4.  The plaintiffs

were given a deadline of October 1, 2007, for any such motion.  In the meantime, Judge Facciola

denied without prejudice the defendants' motion for sanctions.  Id.

        At this point in the case, a series of extensions and stays ensued, driven at first by

motions for continuances filed by Mr. Myart in which he claimed that medical incapacitation

temporarily prevented him from continuing with the case.  See, e.g., Docket Nos. 78, 87.

Magistrate Judge Facciola ultimately extended the deadline for the plaintiffs' motion for leave to

file until early December 2007.  See Minute Order (Nov. 13, 2007).  The plaintiffs through

counsel sought to extend this new deadline, again based on considerations relating solely to Mr.

Myart.  See Docket No. 95.  By the time of this request, however, Mr. Myart's application to

renew his membership in the bar of this Court had been denied.[3]  The Magistrate Judge therefore

extended the deadline for the plaintiffs' motion to February 22, 2008, "so as to provide plaintiffs

---

[3]     In October 2007, in another case against the Agriculture Department brought by
Mr. Myart on behalf of a client, Judge Kollar-Kotelly noted Mr. Myart's misrepresentations to
the Court, the judicial inquiries concerning him in his home state of Texas, the denial of his
petition to proceed pro hac vice in Nevada, and his indictment for perjury in Texas.  See
Williams v. Johanns, 518 F. Supp. 2d 205, 209 & n.3 (D.D.C. 2007).  She noted that these
matters "raise a question as to whether he should be permitted to continue practicing as a
member of this Court."  See id. at n.3.  On January 2, 2008, Judge Kollar-Kotelly held Mr. Myart
in civil contempt of this Court for violating Magistrate Judge Facciola's confidentiality order in
the Williams case.  See Williams v. Johanns, 529 F. Supp. 2d 22, 23-24 (D.D.C. 2008); Order,
Williams v. Johanns, Civil Action No. 03-2245 (Jan. 2, 2008) [Dkt. No. 197].  She entered a
separate order that same day prohibiting Mr. Myart from submitting any additional filings in the
Williams case because the Attorney Admissions Review Committee of this Court had rejected
Mr. Myart's application to renew his membership in the bar of this Court and because Mr. Myart
had been provisionally removed from the list of members in good standing.  See Order, Williams
v. Johanns, Civil Action No. 03-2245 (Jan. 2, 2008) [Dkt. No. 196].  Furthermore, even before
Judge Kollar-Kotelly's decisions, the undersigned had found it necessary to order stricken from
the record filings submitted by Mr. Myart because they were scandalous and derogatory.  See
Hildebrandt v. Veneman, 233 F.R.D. 183, 184 (D.D.C. 2005); Pigford v. Veneman, 225 F.R.D.
54, 58 (D.D.C. 2005).

with an opportunity to obtain new counsel[.]" Memorandum Order at 2 (Jan. 11, 2008). The

plaintiffs were advised that their failure to comply with this deadline might result in the dismissal

of their case. Id. At the Court's direction, a copy of this Memorandum Order was mailed

directly to the plaintiffs.

   The plaintiffs then wrote to the Magistrate Judge and described the problems they

had experienced with Mr. Myart, including his inattention to their case and his lack of

communication with them. See Docket No. 102. In light of their difficulties securing

replacement counsel, the Magistrate Judge extended the deadline for their motion three times.

See Minute Order (Feb. 21, 2008); Minute Order (Mar. 28, 2008); Minute Order (May 12, 2008).

The plaintiffs subsequently found replacement counsel, who obtained an extension of the

deadline until June 30, 2008. See Docket Nos. 108, 109; Minute Order (May 28, 2008). What

the plaintiffs ultimately submitted on that day, however, through their new counsel, was not a

motion establishing excusable neglect under Rule 6(b) for the failure to timely comply with the

December 2006 discovery order. Rather, the document was an opposition to the defendants'

motion for dismissal or other sanctions, which the Magistrate Judge already had denied without

prejudice while awaiting the plaintiffs' excusable neglect motion. See Plaintiffs' Opposition to

Defendants' Motion for Dismissal or Other Sanctions (Jun. 30, 2008) [Dkt. No. 111]. Although

this opposition memorandum argued as a general matter that the plaintiffs should not be held

accountable for the misdeeds of Mr. Myart, see id., the Magistrate Judge observed: "At no point

do the plaintiffs reference Rule 6(b), excusable neglect, or in any other way comply with the

Court's specific instructions." Memorandum Order at 2 (Sept. 24, 2008). The Magistrate Judge

therefore held that the plaintiffs had failed to comply with the December 2006 discovery order,

and granted the defendants leave to re-file their motion for sanctions.  Id. at 3.  The defendants

subsequently renewed their motion, and the plaintiffs filed an opposition through counsel, to

which the defendants replied.

## II.  DISCUSSION

### A.  Motion to Strike

The defendants have filed a motion to strike the plaintiffs' notice of filing, to

which the plaintiffs attached a copy of their untimely delivered second interrogatory responses.

The plaintiffs filed this notice three days after their memorandum opposing the defendants'

motion for sanctions, stating that its purpose was to "inform" the Court of the attached

interrogatory responses "in view of certain of Defendants' statements" in their motion for

sanctions, eleven of which statements the plaintiffs quoted in their notice.  The plaintiffs

suggested that review of the second interrogatory responses "should give the Court some pause

before the Court credits" the eleven quoted statements made by the defendants in support of their

sanctions motion.  Notice of Filing at 1, 3.  The defendants argue that this notice should be

stricken from the record because it violates Local Civil Rule 5.2(a) of this Court and because no

rule authorizes its filing.  Mot. Strike at 1.

Local Civil Rule 5.2(a) states that interrogatories and other discovery materials

"shall be served upon other counsel and parties but shall not be filed with the Clerk until they are

used in the proceeding or upon order of the Court[.]"  The clear purpose of this rule is to prevent

discovery materials from being filed with the Court as a matter of course before parties wish to

use specific materials in the proceeding.  The plaintiffs obviously are attempting to "use" the

second interrogatory responses "in the proceeding" — specifically in order to defeat the defendants' motion for sanctions by undercutting several of the claims made in that motion about the plaintiffs' compliance with discovery obligations.  Whether or not these interrogatory responses actually prove what the plaintiffs believe that they prove, filing them for this purpose does not violate Rule 5.2(a).

The defendants are correct that no rule expressly authorizes the filing of the interrogatory responses in a stand-alone notice, as the plaintiffs have done.  The responses should have been attached as an exhibit to the plaintiffs' memorandum opposing the defendants' sanctions motion.  The responses were filed through the notice only three days later, however, and the defendants have not shown that the error prejudiced them in any way.  Rule 5.2(b) provides: "Discovery materials may be used and filed as exhibits or evidence in support of any motion or at a trial or evidentiary hearing in accordance with the Federal Rule of Evidence."  The defendants maintain that the plaintiffs' notice is not authorized by this rule because the notice makes "no reference to any motion."  Mot. Strike Reply at 1.  To the contrary, the notice clearly references the defendants' motion for sanctions and is intended to support plaintiffs' opposition to that motion.  Under the defendants' parsimonious reading of Rule 5.2(b), discovery materials may be filed "in support of any motion" but not in opposition to any motion, even though such materials can be used freely by either party "at a trial or evidentiary hearing".  One party therefore could file discovery materials in support of a motion — as the defendants have done in support of their sanctions motion, see Docket Nos. 122-1, 122-2 — but the other party could not file different discovery materials in opposing the motion.  That reading of the Rule is untenable.  The defendants' motion to strike will be denied.

### B. Motion for Sanctions

#### 1. Dismissal

The defendants have moved for dismissal or, in the alternative, for lesser sanctions, based on the plaintiffs' failure to obey the December 22, 2006 discovery order. Mot. Sanctions at 1. The Magistrate Judge has ruled that the plaintiffs failed to comply with that Order. Memorandum Order at 2 (Sept. 24, 2008). Because sanctions may be imposed for failure to obey a discovery order, Fed. R. Civ. P. 37(b)(2)(A), the issue is whether and what sanctions should be applied.

Courts may impose a range of sanctions, including dismissal, where a party fails to comply with a discovery order. See Fed. R. Civ. P. 37(b)(2)(A), 41(b). But "the central requirement" of a Rule 37 sanction is that it be "just." Arias v. Dyncorp Aero. Operations, LLC, 677 F. Supp. 2d 330, 332 (D.D.C. 2010) (citing Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996)). Our circuit has provided guidance on determining when the extreme sanction of dismissal is justified. See Webb v. Dist. of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998). Under Webb, dismissal is warranted when (1) the other party has been "so prejudiced by the misconduct that it would be unfair to require [the party] to proceed further in the case," (2) the party's misconduct has put "an intolerable burden" on the court by requiring the court to modify its own docket and operations in order to accommodate the delay, or (3) the court finds it necessary "to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." Id. at 971; see Young v. Office of U.S. Senate Sergeant at Arms, 217 F.R.D. 61, 65-66 (D.D.C. 2003). These guidelines apply not only to dismissal but to any other "severe"

sanction, which means a sanction that is "litigation-ending" because it denies a party the right to a trial on the merits.  Bonds v. District of Columbia, 93 F.3d at 808-09; see Klayman v. Judicial Watch, Inc., 802 F. Supp. 2d 137, 151 (D.D.C. 2011) (characterizing as a "severe sanction" a proposed order that "will effectively prevent [the plaintiff] from carrying his burden of proof on his claims, thereby almost certainly *requiring* dismissal").  Before imposing a severe sanction, "a district court must 'consider whether lesser sanctions would be more appropriate for the particular violation' because the judicial system favors disposition of cases on the merits." Moore v. Napolitano, 723 F. Supp. 2d 167, 179 (D.D.C. 2010) (quoting Bonds v. District of Columbia, 93 F.3d at 808).  "'[D]ismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile."  Bonds v. District of Columbia, 93 F.3d at 808 (quoting Shea v. Donohoe Constr. Co., 795 F.2d 1071, 1075 (D.C. Cir. 1986)).[4]

### a.  Prejudice to Defendants

In determining whether a party's misconduct prejudices the other party so severely as to make it unfair to require the other party to proceed with the case, courts look to whether the aggrieved party has cited specific facts demonstrating actual prejudice, such as the loss of key witnesses.  Shea v. Donohoe Constr. Co., 795 F.2d at 1074; see id. at 1075 (noting that dismissal has been upheld where "the errant behavior has caused the other party severe prejudice in his

---

[4]      The defendants argue that dismissal also is warranted under Rule 41(b) for failure to prosecute, because the plaintiffs have not sought any discovery, without which they cannot prevail on their claims.  Mem. at 14-16.  The same factors are relevant to determining whether dismissal is appropriate for failure to prosecute and failure to obey a discovery order.  Compare Webb v. District of Columbia, 146 F.3d at 971, with Allen v. United States, 277 F.R.D. 221, 223 (D.D.C. 2011).

ability to present his case").  Even where a factual showing of actual prejudice has not been

made, prejudice may be presumed where there has been "unreasonable delay."  Id. (citing Lyell

Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982)).

        The defendants maintain that they have experienced severe prejudice resulting

from the plaintiffs' noncompliance with their discovery obligations because the defendants are

unable to proceed with discovery, formulate an effective defense, move for summary judgment

(if warranted), or prepare for trial.  Mem. at 12.  The defendants also aver that the plaintiffs'

conduct has forced them to waste time and money.  Id.  While these are legitimate grievances,

they do not demonstrate that the plaintiffs' behavior has prejudiced the defendants' ability to

present their case, Shea v. Donohoe Constr. Co., 795 F.2d at 1075, but merely that the defendants

have been unable to move forward toward dispositive briefing or trial because of the plaintiffs'

delay.  This, however, will happen nearly every time that a plaintiff's violation of a court order

delays proceedings during the discovery phase.  Such contentions do not speak to actual

prejudice.  In any event, the contentions made here are not the kind of specific, factually

supported allegations required to find such prejudice.  Cf. Dubicz v. Commonwealth Edison Co.,

377 F.3d 787, 792-93 (7th Cir. 2004) (declining to find prejudice, in context of motion for leave

to amend complaint, where defendant's "case for prejudice is stated . . . only in the most

conclusory of terms" and no "particular witnesses or documents are identified").  Moreover, "the

fact that the other party has incurred costs due to the malfeasance will not ordinarily be enough to

warrant dismissal[.]"  Shea v. Donohoe Constr. Co., 795 F.2d at 1075.  Actual prejudice to the

defendants' case has not been demonstrated.

Dismissal is also justified where "unreasonable delay" by the plaintiffs warrants a presumption of prejudice. Shea v. Donohoe Constr. Co., 795 F.2d at 1075. While the plaintiffs in this case have caused a great deal of delay, some of it resulted from legitimately obtained extensions of time in which to comply with deadlines. But the root cause of most of the delay was the atrocious behavior of Mr. Myart, who no longer represents the plaintiffs and has been barred from practicing in this Court. See supra at 5, n.3. It was Mr. Myart whose unprofessional flouting of his obligations as counsel originally led the Court to establish the discovery deadline set forth in the December 2006 Order. And it was Mr. Myart who then ignored that deadline, obligating the plaintiffs to somehow establish "excusable neglect" under Rule 6(b) for his conduct. Because Mr. Myart, the true transgressor, is no longer involved in this case, the Court is not persuaded that "less dire alternatives" to dismissal would "obviously prove futile" as a sanction for the plaintiffs' noncompliance with the discovery order. Bonds v. District of Columbia, 93 F.3d at 808.

b. Prejudice to the Judicial System

Severe sanctions, including dismissal, may be warranted where a party's misconduct places "an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay." Webb v. Dist. of Columbia, 146 F.3d at 971 (quoting Shea v. Donohoe Constr. Co., 795 F.2d at 1075). Dismissal may be an appropriate exercise of discretion "[w]here the delay or misconduct would require the court to expend considerable judicial resources in the future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of *their* cases." Shea

v. Donohoe Const. Co., 795 F.2d at 1075-76 (emphasis in original).  District courts have

substantial discretion in determining whether it would be overly burdensome to take remedial

action less drastic than outright dismissal.  Id. at 1076.

        While the fallout from the plaintiffs' violation of the December 2006 discovery

order has necessitated a significant expenditure of judicial resources, the Court does not find

such grave prejudice to the judicial system as a result of the violation as to warrant dismissal.

And as noted above, the Court presently is not convinced that less dire sanctions would be futile.

The Court therefore will not dismiss the plaintiffs' case based on prejudice to the judicial system.

### c.  Deterrence

        The Court's legitimate interest in imposing a sanction is "not merely to penalize

those whose conduct may be deemed to warrant such a sanction, but to deter those who might be

tempted to such conduct in the absence of such a deterrent."  DL v. Dist. of Columbia, 274

F.R.D. 320, 325 (D.D.C. 2011) (quoting Bonds v. District of Columbia, 93 F.3d at 808).

Sanctions based on principles of deterrence, however, "call for careful evaluation to ensure that

the proper individuals are being sanctioned (or deterred) and that the sanctions or deterrent

measures are not overly harsh."  Bonds v. Dist. of Columbia, 93 F.3d at 808 (quoting Shea v.

Donohoe Constr. Co., 795 F.2d at 1077).  A discovery sanction imposed for its deterrent effect

"must be calibrated to the gravity of the misconduct," and courts should avoid "'pointless

exaction[s] of retribution[.]'"  Id. (quoting Jackson v. Washington Monthly Co., 569 F.2d 119,

123 (D.C. Cir. 1977)).  "The choice of sanction should be guided by the concept of

proportionality between offense and sanction." DL v. Dist. of Columbia, 274 F.R.D. at 325

(quoting Bonds v. District of Columbia, 93 F.3d at 808).

Where attorney misconduct is involved, as it is here, our circuit "has been notably

reluctant to affirm dismissal under the punishment or deterrence rationale unless the client

himself is shown to deserve the sanction." Shea v. Donohoe Const. Co., 795 F.2d at 1077.

"When the client's only fault is his poor choice of counsel, dismissal of the action has been

deemed a disproportionate sanction," and the district court "should first attempt to sanction the

attorney at fault." Id. (citing Jackson v. Washington Monthly Co., 569 F.2d at 123 & n.24, and

Butler v. Pearson, 636 F.2d 526, 531 (D.C. Cir. 1980)).  "Public confidence in the legal system is

not enhanced when one component punishes blameless litigants for the misdoings of another

component of the system." Jackson v. Washington Monthly Co., 569 F.2d at 123.

Furthermore, dismissal is appropriate as a deterrent measure only when the client

is aware of the attorney's misconduct. B.R. ex rel. Rempson v. Dist. of Columbia, 262 F.R.D.

11, 15 (D.D.C. 2009) (citing Shea v. Donohoe Const. Co., 795 F.2d at 1077-78).  "Concerned

that a client might be unaware of the attorney's misconduct, this circuit requires a district court to

notify the client before dismissing a case pursuant to the deterrence rationale." Id.; accord

Capital Yacht Club v. Vessel Aviva, 646 F. Supp. 2d 156, 157 (D.D.C. 2009); see Shea v.

Donohoe Const. Co., 795 F.2d at 1078 ("We look disfavorably upon dismissals as sanctions for

attorney misconduct or delay *unless the client himself has been made aware of the problem,

usually through notice from the trial court.*  We advise strongly the district courts themselves

directly notify the *client* when attorney misconduct has occurred to a degree that the court is

contemplating dismissal if a recurrence occurs.") (emphasis in original).  Only if a client, after

14

receiving such notification, does not seek new counsel and the errant conduct of the attorney

continues are severe sanctions warranted.  Shea v. Donohoe Constr. Co., 795 F.2d at 1077-78.[5]

    Here, the plaintiffs were not individually warned that Mr. Myart's failure to meet

the January 5, 2007 discovery deadline might lead to dismissal.  It is not clear that the plaintiffs

had any knowledge of Mr. Myart's misconduct until they received a copy of the Magistrate

Judge's January 2008 Order, which stated that Mr. Myart was no longer a member in good

standing of the Court.  To the contrary, the plaintiffs informed the Magistrate Judge in February

2008 that they "did not know that Mr. Myart was not doing the things that he was suppose[d] to

be doing for our case.  After receiving the letter from the court we were really upset because he

assured [us] that our case was doing fine, when really it was not."  Plaintiffs' *Pro Se* Notice at 2

(Feb. 14, 2008) [Dkt. No. 102].  In this same notice, the plaintiffs also state:

> Ever since Mr. Myart has been our attorney we have had trouble
> trying to contact him to find out how our case was going.  We have
> called him repeatedly, and have even left messages on his phone.  He
> would only return our calls every once in a while.  We asked Mr.
> Myart to send us the paperwork that he filed on our behalf and we
> never received any of the paperwork that he said he filed.  When he
> did call, sometimes it would be six months in between phone calls,
> telling us not to worry about our case because it was going great.
> Once after leaving many messages he called and left a message on our
> answering machine stating that "we did not have to call him and
> check up on our case, you do your farm work and he will do his
> attorney work."

Id. at 1-2.

---

   [5]  The defendants' reliance on Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962), and Pigford v. Veneman, 292 F.3d 918, 925-27 (D.C. Cir. 2002), for the proposition that dismissal can be an appropriate sanction for the misconduct of an attorney, is misplaced in light of the more specific guidance that our circuit has provided about when dismissal, as opposed to a lesser sanction, should be imposed for failure to obey a court order.

While the defendants maintain that the plaintiffs share culpability because they "signed interrogatory responses which stated 'not applicable' to fifty-six of fifty-eight discovery requests," Mem. at 14, their signing of such responses does not warrant dismissing the plaintiffs' case. The defendants here are referring to the plaintiffs' *first* set of discovery responses, and it is the failure by Mr. Myart to supplement those responses that is the basis for the defendants' motion. The Court cannot justify dismissing the case based on misconduct by Mr. Myart about which the plaintiffs did not know and were not individually warned by the Court, as required under Shea v. Donohoe Const. Co..[6]

Neither Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976), nor Capitol Chem. Indus., Inc. v. Cmty. Mgmt. Corp., 887 F.2d 332 (D.C. Cir. 1989) (per curiam) (unpublished) — both cited by the defendants — persuade the Court otherwise. In Nat'l Hockey League, the plaintiffs failed to comply with an order after seventeen months of delay and "several admonitions by the Court," including warnings to the plaintiffs "that their failure to provide certain information could result in the imposition of sanctions." Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. at 640-41. In Capitol Chem. Indus., Inc., the plaintiffs completely failed to respond to interrogatories or seek any extensions, "totally disregard[ing] successive court orders instructing responses to [the defendant's] discovery requests." Capitol Chem. Indus., Inc. v. Cmty. Mgmt. Corp., 887 F.2d at *2. And in these opinions, the Supreme

---

[6]    The plaintiffs *were* individually warned, *after* Mr. Myart's exit from the case, that they needed to file a motion establishing excusable neglect for missing the discovery deadline, and that failure to do so might result in dismissal of their case. Memorandum Order at 2 (Jan. 11, 2008). As explained above, the plaintiffs did not ignore this order, but the document submitted by their new counsel failed to adequately address the issues or make the necessary showing of excusable neglect.

Court and the D.C. Circuit merely concluded that the district court did not abuse its discretion by

dismissing the case under the circumstances presented — not that dismissal is mandatory in

similar circumstances.  Id.; Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. at 642.

While deterrence of conduct such as that engaged in by Mr. Myart is important, the Court does

not find dismissal an equitable means of achieving that deterrence, without significant culpability

by the plaintiffs themselves.

## 2.  Other Sanctions

Having concluded that the severe sanction of dismissal is not warranted, the Court

now considers whether any of the lesser sanctions suggested by the defendants are appropriate.

The defendants have requested that, as an alternative to dismissal, the Court

(1) compel responses to certain outstanding interrogatories; (2) preclude the plaintiffs from

seeking from defendants or otherwise offering any evidence regarding similarly situated white

farmers who applied for loans from the USDA; (3) "deem as an established fact that Plaintiffs

never sought to administratively appeal or otherwise challenge Defendants' alleged failures to

given them loan applications and Defendants' 2005 letter allegedly informing Plaintiffs that they

were no longer eligible to seek loans because they were *Pigford* complainants"; (4) preclude the

plaintiffs from "offering any evidence of monetary injuries resulting from their ECOA claims,"

from "asserting any injuries other than what they have included in response to Interrogatory

No. 14," and compelling them to "provide a full and complete response to Interrogatory No. 14

with respect to the injuries that they have listed"; (5) preclude the plaintiffs from "offering any

evidence of consultation with a health care provider other than the doctor identified in response

to Request for Production No. 13"; (6) preclude the plaintiffs from "calling any fact witnesses, other than themselves, or any expert witnesses other than Dr. Waymon Hinson"; (7) preclude the plaintiffs from offering in evidence any documents other than those they have produced thus far in response to the defendants' requests for production; (8) compel the plaintiffs to correlate their interrogatory responses with the interrogatories to which they are responsive; (9) preclude any discovery requests by the plaintiffs; and (10) compel plaintiffs' counsel to sign the discovery responses in accordance with Rule 26(g)(2) of the Federal Rules of Civil Procedure.  Mem. at 17-18.

Because the Court has concluded that dismissal is not justified, any alternative sanctions ordered in lieu of dismissal must not effectively amount to a default judgment.  See Bonds v. District of Columbia, 93 F.3d at 808-09; Klayman v. Judicial Watch, Inc., 802 F. Supp. 2d at 151; Moore v. Napolitano, 723 F. Supp. 2d at 179.  The defendants' second, third, sixth, and ninth requests would have precisely that impact.  As the defendants themselves recognize, imposing these sanctions would effectively prevent the plaintiffs from prevailing on their ECOA claims or proving damages.  See Mem. at 15 ("Instrumental to prevailing on their claims of racial discrimination in violation of ECOA is a showing that Plaintiffs were treated less favorably than similarly situated white farmers seeking loans from defendants.").  The Court therefore will not grant the defendants' request for these sanctions.

The Court also does not deem it appropriate to grant the defendants' fourth, fifth, or seventh requests, which collectively seek to preclude the plaintiffs from offering in evidence any documents other than those they have produced thus far in discovery.  The discovery responses to which the defendants here seek to limit the plaintiffs were made while the plaintiffs

18

were still being represented by Mr. Myart.  Just as the Court does not find dismissal of the

plaintiffs' case a proportionate sanction for Mr. Myart's misconduct, it does not find it equitable

to inexorably bind the plaintiffs to responses supplied in their first set of discovery responses,

which were prepared under the auspices of Mr. Myart.

   This leaves the defendants' first, eighth, and tenth requests, all of which seek to

compel the plaintiffs to adequately and properly respond to the defendants' interrogatories and

production requests.  The Court agrees that if the plaintiffs wish to proceed with this case they

must forthwith comply with all outstanding discovery obligations.  But the Court will leave it to

Magistrate Judge Facciola, to whom pretrial matters have been referred and who has examined

the plaintiffs' discovery responses, to determine which of the plaintiffs' discovery obligations are

still outstanding and to issue appropriate orders.

   Finally, apart from the proposed sanctions described above, the defendants request

an award of attorneys' fees and expenses associated with the filing of their motion for sanctions.

Where a party has failed to comply with an order, regardless of whether other sanctions have

been imposed, "the court must order the disobedient party, the attorney advising that party, or

both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

failure was substantially justified or other circumstances make an award of expenses unjust."

Fed. R. Civ. P. 37(b)(2)(C).  In the circumstances of this case, imposing a monetary penalty on

these plaintiffs for the misdeeds of their attorney would be unjust.  Monetary sanctions against

Mr. Myart, on the other hand, are firmly justified by the cost, inconvenience, and difficulty that

his professional misconduct has imposed on the defendants, the Court, and his own former

clients.  See Shea v. Donohoe Constr. Co., 795 F.2d at 1075 (noting that "the court may order the

guilty counsel to pay a designated amount to the other party to cover his costs and

inconvenience" and that the costs incurred by the defendant "can be adequately compensated by requiring Shea's attorneys to pay those fees, or any other amount that the District Court determines to be just compensation").  Whether the defendants wish to pursue Mr. Myart for attorneys' fees and expenses is a matter the defendants will have to determine.  If they decide to do so, they may file a separate fees petition with supporting documentation and affidavits.

III.  CONCLUSION

For the reasons explained above, the Court has concluded that an order that the plaintiffs comply with all outstanding discovery obligations is the appropriate sanction for the plaintiffs' violation of the Court's discovery order.  The defendants may also pursue monetary sanctions against Mr. Myart if they wish to undertake that effort.

That having been said, the Court needs to be assured that the plaintiffs are still able and willing to prosecute the action.  After Mr. Myart's departure from the case, the plaintiffs initially had difficulty securing replacement counsel and proved unable, even with new counsel, to submit the type of motion they were directed by the Magistrate Judge to file, establishing excusable neglect for their discovery noncompliance.  In view of these considerations, the Court will direct the plaintiffs to notify the Court in writing of their willingness and ability to prosecute this action, including their ability to comply with discovery obligations and other requirements of the litigation process.  The plaintiffs also are cautioned that in view of the considerable time and expense already incurred by the defendants, all future litigation deadlines will be strictly enforced.

An Order consistent with this Opinion shall issue this same day.

SO ORDERED.


/s/
_____
PAUL L. FRIEDMAN
DATE:   November 6, 2012                    United States District Judge