UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
GEORGE HILDEBRANDT, JR. and                         )
PATRICIA HILDEBRANDT,                               )
                                                    )
            Plaintiffs,                             )
                                                    )
      v.                                            )      Civil Action No. 04-1423 (PLF)
                                                    )
TOM VILSACK, Secretary,                             )
United States Department of Agriculture,            )
                                                    )
            Defendant.                              )
_____             )

OPINION AND ORDER

        Plaintiffs in this action, George and Patricia Hildebrandt, claim that the Farm

Service Agency ("FSA") refused to provide them with applications for farm loans and/or for loan

servicing, and that these refusals were made on the basis of the Hildebrandts' race, in violation of

the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq.  The United States Department of

Agriculture ("USDA") has filed a motion for summary judgment, arguing that the Hildebrandts

have suffered no injury and therefore lack standing, and that they have failed to produce

sufficient evidence to support their claims.  Upon consideration of the arguments made by the

parties in their papers and in open court, as well as the relevant legal authorities and the entire

record in this case, the Court will deny USDA's motion.[1]

_____

[1]        The papers considered in connection with the pending motion include:  the
Hildebrandts' Second Amended Complaint ("2d Am. Compl.") [Dkt. No. 154]; USDA's motion
for summary judgment [Dkt. No. 171] and memorandum in support thereof ("USDA MSJ")
[Dkt. No. 171-1]; USDA's statement of material facts ("USDA Stmt. of Facts") [Dkt. No.
171-2]; the Hildebrandts' opposition ("Pls.' Opp.") [Dkt. No. 173-1]; the Hildebrandts' response
to USDA's statement of material facts, and their own statement of material facts ("Pls.' Stmt. of

I.  BACKGROUND

George and Patricia Hildebrandt are a married couple who since 1981 have operated a 242-acre farm in Leavenworth, Kansas.  They bought the farm using funds from a loan administered by FSA, which is an agency of defendant USDA.  The Hildebrandts made payments on the loan through 1996 but then stopped doing so, allegedly because of bad crop yields in 1997 and 1998 and based on the advice of their counsel in the Pigford class action.  See Deposition of George Hildebrandt, Jr. (Jan. 15, 2014) at 42:12-43:21 [Dkt. Nos. 173-4 and 174-1] ("George Hildebrandt Depo.").  The Hildebrandts also state that they sought farm loan assistance from FSA on a biannual basis from 1985 until 2002 or 2003.  See id. at 74:22-75:8.  They contend that beginning in 1996, their efforts were consistently refused by FSA Farm Loan Manager Bruce Nutsch.  See id. at 44:11-45:12, 52:6-19.  The Hildebrandts complained to FSA that they believed Mr. Nutsch was discriminating against them because they are African American.  In response to these complaints, FSA in June 2002 transferred the Hildebrandts' loan file to a different loan manager, who worked at the FSA office in Seneca, Kansas, some 102 miles away from their farm.  See id. at 63:17-64:2; Pls.' Stmt. of Facts at 1-2.

The basis of the present action centers specifically on allegations that, on at least two occasions during the period from 2002 to 2005, the Hildebrandts requested applications for loans and/or for loan servicing but FSA officials refused to provide applications to them.  The Hildebrandts allege that these refusals were made because of their race, in violation of the Equal

Facts") [Dkt. No. 173-2]; USDA's reply ("USDA Reply") [Dkt. No. 174]; and the Hildebrandts' surreply ("Pls.' Surreply") [Dkt. No. 176].

Credit Opportunity Act ("ECOA"), which prohibits discrimination on the basis of race against a credit applicant "with respect to any aspect of a credit transaction."  15 U.S.C. § 1691(a)(1).[2]

This case has a long procedural history, which the Court will not recount in full here.  The Hildebrandts filed the action in 2004, when they were represented by James W. Myart, Jr. as counsel.  They terminated Mr. Myart's representation in March 2008, after Mr. Myart's application to renew his membership in the bar of this Court was rejected.  See Dkt. No. 104; Hildebrandt v. Vilsack, 287 F.R.D. 88, 91-93 & n.3 (D.D.C. 2012).[3]  Nevertheless, the Hildebrandts' Second Amended Complaint — drafted and filed by Mr. Myart in May 2005 — remains the operative pleading in the case.  After Mr. Myart's departure, the Hildebrandts obtained new counsel.  By November of 2012, however, the Court ordered the Hildebrandts to file a written notice of their willingness and ability to prosecute the action.  Hildebrandt v. Vilsack, 287 F.R.D. at 99; Dkt. No. 141.  The Hildebrandts' new counsel subsequently informed the Court that they were unable to continue representing the plaintiffs on an unpaid basis, see Dkt. No. 142, and so in April 2013 the Court appointed attorneys at the law firm of Hogan Lovells as pro bono counsel for the Hildebrandts.  Bradshaw v. Vilsack, Civil Action No. 04-1423, 2013 WL 1716502 (D.D.C. Apr. 18, 2013).  The parties then engaged in discovery, which was followed by USDA's filing of the present motion for summary judgment.

---

[2]     Pursuant to this Court's Order of July 14, 2005 [Dkt. No. 35] and its Memorandum Opinion and Order of March 31, 2006 [Dkt. Nos. 53 and 54], the Hildebrandts are limited to advancing claims based on events occurring between August 23, 2002 and May 2005.  See USDA MSJ at 7-8; Pls.' Opp. at 4.

[3]     The troubled history of Mr. Myart's involvement in this case is more fully recounted in previous opinions and filings.  See Hildebrandt v. Vilsack, 287 F.R.D. at 95-99; Hildebrandt v. Veneman, 233 F.R.D. 183 (D.D.C. 2005); see also Dkt. No. 102.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); see FED. R. CIV. P. 56(a), (c).  In making that determination, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).  A disputed fact is "material" if it "might affect the outcome of the suit under the governing law."  Talavera v. Shah, 638 F.3d at 308 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  A dispute over a material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Paige v. DEA, 665 F.3d 1355, 1358 (D.C. Cir. 2012).  "[T]he moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment.  Thus, [the court] do[es] not determine the truth of the matter, but instead decide[s] only whether there is a genuine issue for trial."  Barnett v. PA Consulting Group, Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v. Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)); see also Tolan v. Cotton, 134 S. Ct. at 1866; Anderson v. Liberty Lobby, Inc., 477 U.S. at 249, 255.

### III.  DISCUSSION

#### A.  Article III Standing

USDA contends that even if the Hildebrandts were wrongfully refused the opportunity to apply for loans and loan servicing, these refusals could not have caused them any injury because they never were qualified to receive a loan from FSA in the first place.  As a consequence, argues USDA, the Hildebrandts lack Article III standing to pursue this action. USDA Reply at 10-13.

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'"  Massachusetts v. E.P.A., 549 U.S. 497, 516 (2007).  "To enforce this limitation, [federal courts] demand that litigants demonstrate a 'personal stake' in the suit." Camreta v. Greene, 131 S. Ct. 2020, 2028 (2011) (quoting Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009)).  "The party invoking the Court's authority has such a stake when three conditions are satisfied:  The [plaintiff] must show that he has 'suffered an injury in fact' that is caused by 'the conduct complained of' and that 'will be redressed by a favorable decision.'"  Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

USDA has miscast its argument as one of Article III standing, which implicates the subject matter jurisdiction of this Court.  Whether or not the Equal Credit Opportunity Act affords relief to persons who have suffered no economic injury as a result of the defendant's conduct is not a question of standing, but a question of statutory construction.  See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 869-70 (2011) (question of Article III injury in fact distinct from question of what types of injuries are protected by a statute); see also Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland, 535 U.S. 635, 642-43 (2002) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter

jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case.") (quoting

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998)).[4]  Regardless of the

answer to that statutory question, the Hildebrandts' allegation that they were the victims of

discrimination is sufficient to satisfy Article III's injury-in-fact requirement.  See Allen v.

Wright, 468 U.S. 737, 755 (1984), abrogated in part on other grounds by Lexmark v. Int'l, Inc. v.

Static Control Components, Inc., 134 S. Ct. 1377, 1386-88 (2014).  And this injury, alleged to be

caused directly by the actions of FSA officials, could be redressed by a judgment in the

Hildebrandts' favor and an award of compensatory damages or equitable relief.  The Court

therefore concludes that the Hildebrandts have Article III standing to pursue this lawsuit.[5]

## B.  Are Plaintiffs' Claims Cognizable Under the ECOA?

USDA contends that even assuming the Hildebrandts were denied loan

applications on account of their race, their claims fail as a matter of law because the claims are

not cognizable under the Equal Credit Opportunity Act.  This argument rests on the same

foundation as USDA's faulty standing argument, namely that the Hildebrandts supposedly would

not have qualified to receive any FSA loans even had they submitted applications for them.  See

USDA MSJ at 15-16.  According to USDA, there are two reasons why the Hildebrandts would

have failed to qualify for a loan.  First, it is undisputed that as of September 2002, the

---

[4]      The Hildebrandts maintain that they did, indeed, suffer pecuniary injury due to
FSA's actions, in two different ways.  They contend that notwithstanding USDA's arguments to
the contrary, they might have qualified for a loan to fix their farm's levee.  See Pls.' Opp. at 11
n.3.  The Hildebrandts also argue that they were harmed by being deprived of the chance to be
considered for a loan, which, even if unsuccessful, would have given them valuable information
that could have influenced their economic decision-making.  See Pls.' Surreply at 2.  The Court
has no present need to address the validity of these contentions.

[5]      Because the Court reaches this conclusion on the grounds explained above, the
information that USDA seeks to add to the record by way of two supplemental exhibits, see Dkt.
No. 178, is irrelevant.  The Court therefore will deny as moot USDA's motion for leave to file
these exhibits.

Hildebrandts had been delinquent on their existing FSA loans for six years and the amount of their delinquency was approximately $40,000.  See Pls.' Stmt. of Facts at 4.  A borrower who is delinquent on any federal debt may not obtain a loan from FSA.  See 31 U.S.C. § 3720B. Second, USDA contends that even apart from this delinquency, the Hildebrandts did not have sufficient income to qualify for any farm loans.  See USDA MSJ at 17-19.

Based on the foregoing foundation, USDA makes two arguments.  First, it contends that under the ECOA the Hildebrandts must show that they suffered an "adverse action," and it argues that "the refusal to extend credit (and so, by implication, the failure to provide a loan application), to a delinquent borrower . . . is not an adverse action for purposes of ECOA liability."  USDA Reply at 12 (citing 15 U.S.C. § 1691(d)(6)); see also USDA MSJ at 17. But USDA is wrong, because it cites a subsection of the ECOA that has nothing to do with the statute's prohibition on discriminatory conduct.

The term "adverse action" appears in a subsection setting forth the statute's requirements for the provision of notice to a credit applicant.  See 15 U.S.C. § 1691(d)(6); see also Treadway v. Gateway Chevrolet Oldsmobile, Inc., 362 F.3d 971, 973, 975-78 (7th Cir. 2004) (addressing meaning of "adverse action" in context of ECOA claim for failure to provide notice).  The ECOA's prohibition on discrimination, however, is provided in a different subsection of the statute, and is articulated in broad terms:  "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race . . . ."  15 U.S.C. § 1691(a).  USDA states that "[f]or purposes of this motion only, [USDA] assumes that the denial of a request for a loan application is actionable under ECOA". See USDA MSJ at 12 n.3.  But no such concession is necessary, nor need it be limited to this case.  The refusal to provide a person with a credit application because of the applicant's race

plainly constitutes "discriminat[ion] . . . with respect to an[] aspect of a credit transaction . . . on the basis of race," 15 U.S.C. § 1691(a), which is proscribed by the ECOA.  See Chiang v. Veneman, 385 F.3d 256, 265 (3d Cir. 2004) ("Indeed, a refusal to provide a loan *application* 'on the basis of race, color, religion, national origin, sex or marital status, or age' would be a prototypical ECOA violation, as it would deny members of a protected class any access to credit."), abrogated in part on other grounds as stated in In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 318 n.18 (3d Cir. 2008); Rosa v. Park West Bank & Trust Co., 214 F.3d 213, 215-16 (1st Cir. 2000) (complaint alleging refusal to provide loan application for discriminatory reason states claim under ECOA).  Because the Hildebrandts have alleged that they were denied farm loan and servicing applications on account of their race, their claims fall comfortably within the ambit of the ECOA's prohibition of racial discrimination.

Second, USDA argues that case law under the ECOA provides that, as part of a plaintiff's *prima facie* case, it must be shown that he or she was qualified to receive a loan.  See USDA MSJ at 15-16 (citing, *inter alia*, Rowe v. Union Planters Bank of Southeast Missouri, 289 F.3d 533, 535 (8th Cir. 2002)).  The Hildebrandts persuasively argue, however, that such a requirement is inapt where the plaintiffs' claim is based upon the denial of an opportunity to apply for a loan, rather than the denial of a loan for which an application actually has been submitted.  See Pls.' Opp. at 9-10.  As the Hildebrandts correctly note, requiring them to prove that they were qualified for a loan "puts the cart before the horse."  Id. at 10.  This is because "[w]hile an individual must be qualified to receive a *loan*, an individual does not need to be qualified in any way to receive a *loan application*."  Id. at 9.[6]

---

[6]         The Court also notes that USDA has not contested the availability under the ECOA of compensatory damages for non-pecuniary harm.  The statute provides that "[a]ny creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant."  15 U.S.C.

The Court therefore rejects USDA's arguments that the Hildebrandts' claims fail as a matter of law based on their purported ineligibility for any FSA loans. Accordingly, the Court will proceed to determine whether this case presents factual disputes that preclude granting summary judgment in USDA's favor.

### C.  Are There Genuine Issues of Material Fact?

Both parties agree that in order to have a viable claim under the ECOA, the Hildebrandts must show (1) that they requested applications for loans or loan servicing, and that (2) FSA officials denied these requests because of the Hildebrandts' race. USDA contends that the record is insufficient to support a reasonable jury's finding in the Hildebrandts' favor on either of these elements.

### 1.  Whether the Hildebrandts Requested Applications for Loans or Loan Servicing

The Hildebrandts rely on their own deposition testimony, particularly that of George Hildebrandt, to support their contention that they did in fact request from FSA loan or loan-servicing applications during the period from August 2002 to May 2005. USDA argues that Mr. Hildebrandt's recollection of alleged events is simply too uncertain to give rise to genuine issues of material fact regarding whether any such requests were made. USDA Reply at 8. The Court disagrees with USDA and concludes that, although Mr. Hildebrandt's testimony is not a paragon of clarity or specificity, it could, if credited by a reasonable jury, support a finding that

---

§ 1691e(a). As the Supreme Court has explained, the term "actual damages" means different things under different statutes. See F.A.A. v. Cooper, 132 S. Ct. 1441, 1449 (2012) ("[T]he precise meaning of the term changes with the specific statute in which it is found.") (internal quotation marks omitted). Sometimes it is understood to encompass non-pecuniary harm; in other contexts, the term "has been used or construed more narrowly to authorize damages for only pecuniary harm." Id. There is no need to decide here how Congress intended to use the term "actual damages" in the ECOA. See 15 U.S.C. § 1691e.

the Hildebrandts made at least one application request that was denied during the relevant time frame.

It is undisputed that on October 10, 2002, the Hildebrandts met with several FSA officials.  The Hildebrandts maintain that at that meeting they requested a loan application, which was refused.  When George Hildebrandt was asked at his deposition to describe what he had "ask[ed] FSA to do for [him] at that meeting," Mr. Hildebrandt testified:  "I think I wanted them basically to give me a loan, wanted them to write my debt off."  George Hildebrandt Depo. at 72:7-10.  Later on during the deposition, Mr. Hildebrandt was asked directly whether he was "seeking a loan or a loan application at this meeting," to which he replied, "[y]es."  Id. at 73:21-74:3.  And when pressed as to whether it was his testimony that he was "not sure if [he] sought a loan application . . . at this meeting," Mr. Hildebrandt responded, "I have never met with any USDA official that I did not ask for a loan or a loan application."  Id. at 74:9-13.  These statements are sufficient to raise a genuine issue of fact as to whether the Hildebrandts requested a loan application at the October 2002 meeting.  And, as USDA does not dispute that the Hildebrandts never received such an application — simply maintaining that no application ever was requested — there exists a genuine issue of material fact with respect to the first element of the Hildebrandt's ECOA claim.

USDA argues that George Hildebrandt's deposition testimony amounts to nothing more than a "scintilla of evidence in support of the plaintiff[s'] position," which is insufficient to withstand a motion for summary judgment.  USDA Reply at 4 (quoting Anderson v. Liberty Lobby, 477 U.S. at 252).  USDA cites Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003), for the specific proposition that "vague statements" are inadequate to support a reasonable jury's finding in a plaintiff's favor.  In Ben-Kotel, the plaintiff argued that there was an issue of

fact as to the year in which Howard University had hired a particular faculty member, 1998 or

1999.  The plaintiff cited deposition testimony in which an associate dean, in response to a

question about when he interviewed the faculty member, stated "I think it took place in 1999."

Id. at 536.  The court of appeals concluded, however, that because the record contained

"overwhelming documentary evidence — three affidavits and two separate business records —

indicating the University hired [the faculty member] on August 16, 1998," the district court was

able to conclude on summary judgment that the associate dean simply had been mistaken at his

deposition.  Id.  The court of appeals therefore affirmed the district court's grant of summary

judgment for the University.  Id.

   The Hildebrandts' case does not present similar circumstances.  George

Hildebrandt has testified in fairly certain terms that he did request a loan application at the

October 2002 meeting.  Although USDA points out that the meeting notes recorded by FSA

officials do not indicate that Mr. Hildebrandt made such a request, see USDA Reply at 8, one

would not expect such a record to have been made if, as the Hildebrandts allege, their request

was denied for discriminatory reasons.  Moreover, the absence of such a record merely contrasts

with Mr. Hildebrandt's deposition testimony, raising a factual dispute on the point.  Unlike the

situation presented in Ben-Kotel, there is not "overwhelming documentary evidence" that runs

contrary to Mr. Hildebrandt's contention.  Instead, there is a genuine issue of material fact that

cannot be resolved by the Court on a motion for summary judgment.[7]

---

[7]  The Hildebrandts also allege that Mr. Hildebrandt approached FSA official Bruce
Nutsch to request a loan application at least once, and perhaps twice, during the period between
August 2002 and May 2005.  See Pls.' Opp. at 14.  The portions of Mr. Hildebrandt's deposition
testimony cited in support of these contentions is far less specific than his testimony regarding
the October 2002 meeting.  Mr. Hildebrandt also seems to contradict himself regarding whether
any such interaction with Mr. Nutsch occurred within the relevant time frame, as, in response to
a question regarding whether "the last meeting [he] had with Mr. Nutsch[] was sometime prior to
June 3rd, 2002," Mr. Hildebrandt responded, "I think so."  George Hildebrandt Depo. at 79:20-

2. Whether FSA's Alleged Conduct Was Discriminatory

To succeed on their ECOA claims, the Hildebrandts must demonstrate not only that the FSA denied at least one request for a loan application or loan servicing, but also that any such denials were made on the basis of the Hildebrandts' race.  In support of this element, the Hildebrandts advance a number of contentions.  See Pls.' Stmt. of Facts at 5-6; Pls.' Opp. at 16-19.  First, they maintain that white farmers operating in the Hildebrandts' locality did receive loan applications from FSA when they requested them, raising an inference that FSA's refusal to provide applications to the Hildebrandts was racially motivated.  See Pls.' Opp. at 16-17 (citing Pls.' Opp., Ex. G, a table produced by USDA that provides loan application outcomes for 19 white farmers in the same locality [Dkt. No. 173-10]).  The Hildebrandts also cite several interactions between them and FSA official Bruce Nutsch, which, they contend, demonstrate that Mr. Nutsch is a racist.  See id. at 17-18.  Further, the Hildebrandts point out that after they complained to FSA about Mr. Nutsch's alleged discrimination against them, FSA responded by reassigning their loan file to an FSA office located 102 miles away from their home, even though several other offices were closer by.  Id. at 18.

USDA argues that the foregoing, as well as other assertions made by the Hildebrandts, fail to raise any genuine issues of fact regarding whether FSA's purported refusal to provide them with loan applications was racially motivated.  See USDA Reply at 8-10.  But the Court concludes that at least one category of evidence cited by the Hildebrandts — specifically, the apparent disparity between them and those white farmers who did receive loan applications from FSA — could support a finding that FSA's alleged refusal to provide applications to the Hildebrandts was due to their race.  USDA argues that any assertions about

---

80:9.  Nonetheless, because there is a genuine issue of material fact with respect to at least one alleged instance of discrimination, the Court need not address the sufficiency of the Hildebrandts' evidence as to the alleged interactions with Mr. Nutsch.

white farmers "have no relevance in the absence [of] evidence about those farmers' operations, credit history and interaction with Farm Loan Managers assigned to their files." Id. at 9.  But the Hildebrandts do not claim that they were denied loans for which they had submitted applications — in which case comparator evidence would require information demonstrating that white farmers given loans were similarly situated in pertinent respects.  Rather, their claim is that they were denied the opportunity to apply for a loan in the first place.  With respect to such a claim, evidence that white farmers in the area were either granted or denied loans — and thus, evidently, requested and received loan applications — is relevant and fairly could support an inference of discrimination.  Consequently, the Court concludes that there exists a genuine issue of material fact regarding the second element of the Hildebrandts' ECOA claims.  This conclusion, together with the conclusions reached by the Court elsewhere in this Opinion, render summary judgment in USDA's favor inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the defendant's motion for summary judgment [Dkt. No. 171] is DENIED; it is

FURTHER ORDERED that the defendant's motion for leave to file two supplemental exhibits [Dkt. No. 178] is DENIED as moot; and it is

FURTHER ORDERED that on or before May 22, 2015, the parties shall file in writing a joint status report indicating their respective views on how this case should proceed, including whether the parties request referral to the United States District Court Mediation Program, which is administered by the Office of the Circuit Executive, see LOC. CIV. R. 84.4, or whether they wish to pursue settlement discussions with the aid of a magistrate judge.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  May 5, 2015